**JEFFREY TODD BOWERS**                                                    **PLAINTIFF**

**v.**

**STATE FARM INSURANCE COMPANY,**
**RON REEVES and PATRICK WARREN**                              **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court upon Defendants' Motion for Summary Judgment

(Docket #44).  Plaintiff has responded (Docket #50).  Defendants have replied (Docket #53).

This matter is now ripe for adjudication.  For the following reasons, Defendants' motion is

GRANTED.

## BACKGROUND

Plaintiff Jeffrey Todd Bowers, an African American male, began working for Defendant

State Farm in the early 1980s, and worked there for approximately 24 years before he was

terminated in May of 2008.  Bowers started as a claims representative in an entry-level position.

He was promoted to various positions by State Farm over the course of his employment.  In

2003, Bowers was working as an Agency Field Specialist in State Farm's Learning and

Development Department.  Defendant Ron Reeves, also an African American male and an

Agency Field Executive, became a manager of Bowers at the time he was in the Learning and

Development Department.

In 2006, Bowers chose to apply for State Farm's Agency Career Track program, which is

intended to provide State Farm with a pool of "Agency Interns" who complete training and may

be considered for unexpected Agency openings, i.e., independent contractor positions with State

Farm.  First, an employee who applies for the program must complete a screening questionnaire and background check, as well as meet current Human Resources standards and receive counseling by the Superintendent of the Agency Career Track.  Then an employee is considered an "Approved candidate" and placed in an "Approved pool."  Approved candidates may express the desire to be placed in an Agency opening.  Approved candidates are considered before any other candidates for an opening.  If a candidate is selected, he or she goes on to complete licensing and training.  To complete the Intern program, a candidate must go through two phases: (1) In Phase One, the candidate completes six months of classroom education, field work, and online classes and graduates to become an Agency Intern; (2) In Phase Two, the Agency Intern works with a State Farm Agent in his or her office in order to learn the job while awaiting an Agency opening.

On July 30, 2006, Bowers signed a "Declaration of Understanding/Statement of Intention" declaring that he wished to continue in the program.  On January 7, 2007, Bowers received notice that he was an Approved candidate and had been placed in the "Agency Career Track Approved Candidate Pool."  On January 10, 2007, Bowers signed an additional "Declaration of Understanding/Statement of Intentions" form indicating that he wished to continue in the process.  He signed an addendum on May 8, 2007, indicating that he wished to be placed in the Louisville, Kentucky, market area.  Bowers graduated from Phase One of the Intern program on December 1, 2007.  Bowers was thereafter assigned to work with Agent David Franck in Louisville, Kentucky.

Shortly after December of 2007, Reeves "assumed additional management duties related to the Intern program, including management of Bowers."  According to Reeves, in late January

or early February of 2008, he received a request from Julie Maloy, Vice President of Agency for Kentucky, to look into Bowers's production numbers. Reported figures demonstrated that Bowers had represented he had solicited the sales of more policies than all of the reported policy sales solicited by the entire Franck office. For instance, although the office as a whole reported selling zero life policies and two health policies in January of 2008, Bowers reported selling three of each. During Reeves's investigation into the matter, he reviewed Bowers's Agency Intern file. Reeves discovered that although Bowers drove a company car from his home in Indianapolis to work in Louisville, he had failed to report any personal miles during the last eight months (and 20,233 miles) he spent in the Learning and Development Department. Reeves also noticed that Bowers held a Kentucky resident insurance license, despite being a resident of Indiana. When Reeves contacted the Kentucky Department of Insurance, he was informed that Bowers had used his work address as his resident address in order to secure a Kentucky insurance license. Finally, Reeves learned that Bowers had issued five "Agent Draft Authority drafts" during his time working at Franck's office. Although Bowers had received training on issuing drafts, Reeves states that Agency Interns are not allowed to write such drafts until they receive an agency contract.

On February 22, 2008, following the conclusion of his investigation, Reeves contacted Terry Lyons, a member of State Farm's Internal Auditing Department. Reeves asked Lyons to conduct an independent investigation of Bowers. Lyons's report noted the same concerns that Reeves had discovered: (1) discrepancies in reporting, (2) issuance of Agent Draft Authority drafts, (3) not reporting personal mileage, and (4) using his work address for a Kentucky resident license.

On April 15, 2008, Bowers met with Ron Reeves, Terry Lyons, and Defendant Patrick Warren in Cincinnati, Ohio. During that time, Warren was Vice President of Agency for Ohio for State Farm Mutual and Reeves's manager. The purpose of the meeting with Bowers was to address the concerns raised by Reeves's and Lyons's investigations. Bowers states that he was only told he was meeting with Reeves, he did not know what the meeting was about, and such concerns had never been raised prior to this meeting. According to Lyons's notes after the meeting, Bowers said he did not claim personal mileage because he was never instructed to do so and didn't think of it because no one reported personal miles. In addition, Bowers explained that his reported numbers might be off because he was "just doing it wrong" and may have counted renewals as new sales. Bowers issued Agent Draft Authority drafts because he had been through training and believed he had authority to do so as an acting Agent. Finally, Bowers stated that he was told by someone at the Kentucky Department of Insurance that he needed a Kentucky address to obtain a license, and therefore, he provided his work address.

On May 13, 2008, Bowers emailed Reeves a document containing additional responses to the concerns raised in the April 15th meeting. Upon consideration of Bowers's actions and his responses, Reeves made the decision to terminate Bowers for violation of State Farm's Code of Conduct. State Farm employees, including Bowers, were required to sign an acknowledgment that they had read and received the company's Code of Conduct and agreed to abide by its requirements. The Code of Conduct stressed the importance of honesty and required all employees to report information accurately. There is evidence on record that Bowers signed acknowledgment forms in 1999, 2000, 2002, 2003, 2004, 2005, 2006, and 2007. According to Reeves, a violation of the Code of Conduct effectively disqualified Bowers from being an

Agency Intern or State Farm Agent.[1]

Warren agreed with Reeves's decision to terminate Bowers. On May 20, 2008, Bowers received a termination letter from State Farm Human Resources Representative Craig Campany. Bowers thereafter applied for and received unemployment insurance. He now works as an insurance agent for Allstate Insurance Company.

During the time Bowers was an Agent Intern, three Agent positions in the Louisville, Kentucky, area became available. The first position became available after an Agent abruptly left State Farm and the company had "roughly two weeks" to find a replacement. Sherry Henry, Agency Field Executive, selected Jeff Flood, a Caucasian male, for the position because he "had spent more than two years producing and servicing clients for one of State Farm's top-producing agents . . . ." Sherry Henry Aff., DN 44-7, p. 2. According to Henry, Bowers did not receive this position because he had not worked in an Agent's office prior to his internship, and therefore, did not have the background necessary for the position.

The second position was left vacant by an Agent in the Louisville area who was diagnosed with terminal cancer. Sherry Henry was also the Agency Field Executive in charge of hiring this Agent's replacement. She chose Mark Cumella, a Caucasian male, to fill the position. Henry states that she did not hire Bowers because Cumella had better field development results than Bowers, a more caring and compassionate temperament, Bowers's interview was unimpressive, and she was aware of the ongoing investigation of Bowers relating to integrity

---

[1]The "Declaration of Understanding/Statement of Intention" form that Bowers signed on January 10, 2007, contains the following language: "Candidates will automatically be withdrawn for ethical or integrity violations occurring or uncovered while pursuing a career as a State Farm Agent." Ex. 14, DN 44-6, p. 7.

issues. In contrast, Bowers states that he was in the car with Cumella at the time Cumella received a phone call from Henry telling him that he had been chosen to fill the Agent position, prior to any interviews. Shortly thereafter, Henry interviewed Bowers and Cumella even though she had already informed Cumella that he had the job and Cumella had met with the Agent he was replacing.

Finally, Sage Kohler, Agency Field Executive, chose Carmel Stauffer, a Hispanic female, for an Agent position in March of 2008. Kohler states that she did not interview Bowers because she knew he was under investigation and a decision regarding his employment with State Farm was forthcoming. In addition, Kohler states that Stauffer was under no such investigation and did not receive the Agency contract until after Bowers was terminated. Bowers argues that he was the only Approved candidate at that time and should have been considered for the position first before State Farm looked to any non-approved candidates, such as Stauffer.

Bowers filed suit in Jefferson Circuit Court on March 24, 2009, against State Farm and Reeves and Warren in their official capacities as representatives of State Farm. State Farm filed a Notice of Removal in this Court on April 20, 2009, on the basis of diversity jurisdiction. Plaintiff filed an Amended Complaint on April 1, 2010. Defendants filed the present motion for summary judgment on November 1, 2010.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiff's Amended Complaint alleges the following causes of action: (1) breach of contract; (2) fraudulent inducement; (3) racial discrimination; and (4) retaliatory discharge. Defendants seek summary judgment on all claims.

## I.     Breach of Contract

In order to establish a claim for breach of contract, the plaintiff must demonstrate by clear and convincing evidence the existence and breach of an actual agreement, or "'contractually imposed duty.'" *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (quoting *Lenning v. Comm. Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001)). Defendants argue that no such contract existed, and therefore, summary judgment should be granted.

As an initial matter, Defendants note that Plaintiff's breach of contract claims cannot survive against Reeves and Warren because there was no contract or understanding between Plaintiff and either of these two individuals as to Plaintiff's future with State Farm. Although Plaintiff's breach of contract claim is partially founded upon oral representations, he does not allege that any of these representations came from either Reeves or Warren. Accordingly, summary judgment as to the breach of contract claims against Reeves and Warren is GRANTED.

Plaintiff's response brief argues that State Farm is liable under a breach of contract theory for four reasons: (1) Plaintiff understood Defendant's oral representations and representations in the "Declaration of Understanding/Statement of Intention" form to provide a guarantee that Plaintiff would be appointed as an Agent after successfully completing the Internship program; (2) Defendant's documents indicate that Approved candidates must be considered for Agency openings, and Plaintiff was not genuinely considered for three openings; (3) Plaintiff understood that Approved candidates would be considered before non–approved candidates when Agency openings became available, but non-approved Carmel Stauffer received an Agency position and Plaintiff was not considered; and (4) Defendant breached its agreement with Plaintiff by failing to offer him an opportunity to stay with the company after he was not granted an Agency position.

First, although Plaintiff argues that his understanding of his terms of employment with State Farm was the result of oral representations, Plaintiff has failed to provide any factual support for such oral representations. Plaintiff's response brief and supporting affidavit lack any evidence as to the substance of these conversations. It also remains unclear who made these

representations and when they were made. Accordingly, Plaintiff's mere allegations of oral

representations are insufficient to create a genuine issue of material fact that such representations

were made.

Next, Plaintiff points to a portion of the "Declaration of Understanding/Statement of

Intention" form in support of his argument that he was guaranteed an Agency position after

successfully completing the Internship program. That form, which Plaintiff signed on July 30,

2006, and January 10, 2007, states:

> Upon successful completion of the Internship program and meeting current
> eligibility requirements, the candidates will be appointed according to the
> provisions in the State Farm Agent's Agreement (Form TICA04).

Declaration of Understanding/Statement of Intention, dated January 10, 2007, DN 44-6, p. 9; *see*

*also* Declaration of Understanding/Statement of Intention, dated July 30, 2006, DN 44-5, p. 22.

The State Farm Agent's Agreement (Form TICA04) is an "at will" contract effective for twelve

months that permits an Agent to operate on behalf of State Farm as a term independent

contractor. Plaintiff believes this language supports the proposition that he was entitled to

appointment as an Agent.

Another portion of the Declaration of Understanding, however, indicates that there is no

guarantee that a candidate will be appointed as a State Farm Agent after completing the

Internship program:

> An employee or non-employee's candidacy may be terminated at any time either
> by the candidate or State Farm. **There is no guarantee of an appointment as a**
> **State Farm Agent pursuant to the State Farm Agent's Agreement (Form**
> **TICA04) or any successive State Farm Agent's Agreement.** Employee
> candidates who withdraw from the Internship process will be offered an
> opportunity to return to an operations position. There are no guarantees that
> individuals will return to the same position, job level, salary level, or location
> they had before pursuing Agency.

DN 44-6, p. 10 (emphasis added). Although Plaintiff argues that this language merely creates an ambiguous interpretation, the Court disagrees.

The Kentucky Court of Appeals identified the proper standard to apply when interpreting contract language in *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381 (Ky. Ct. App. 2002):

> The primary object in construing a contract . . . is to effectuate the intentions of the parties. . . . "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986)).
>
> Where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding the execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties. . . . Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence. . . . A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations. . . . The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms. . . . Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts . . . .

*Id.* at 384-85 (internal citations omitted). The Court finds that the contract is unambiguous. The portion of the contract which Plaintiff relies on merely states the procedure for appointing a candidate who has successfully completed the program, i.e., the candidate becomes an independent contractor. The provision does not state that all candidates will be appointed as Agents. Rather, it acknowledges that candidates are appointed according to the provisions set forth in State Farm's Term Independent Contractor Agreement. Reading the contract in its entirety and construing it as a whole, this provision cannot be read as a guarantee that a successful candidate will be appointed as an Agent. The provision itself indicates that the

candidate must also meet the current eligibility requirements. Other provisions within the contract indicate that an employee's candidacy may be terminated at any time and there is no guarantee of an appointment as an Agent. In addition, candidates may be withdrawn from the program for ethical or integrity violations. Accordingly, the Court finds that the contract is unambiguous and does not offer any guarantee of employment as an Agent after completing the Internship program.

Plaintiff's next two arguments focus on State Farm's procedures to fill open Agency positions. Plaintiff alleges that State Farm breached its contract with him by failing to consider him for open Agency positions and by considering non-approved candidates before Approved candidates like himself. Plaintiff has, however, failed to present evidence demonstrating that he was not considered for any available position. Instead, the evidence shows that, while Plaintiff was considered for all three Agency positions that opened up during his time as an Intern, he was not chosen for these positions for various reasons. Further, although Plaintiff was not interviewed for every position, Plaintiff has failed to point to a provision that guarantees he will receive an interview for every open Agency position. In sum, if the agreement between Plaintiff and State Farm is read as guaranteeing consideration for all open Agency positions and consideration of Approved candidates before non-approved candidates, Plaintiff has failed to present evidence that State Farm breached that agreement.

Finally, Plaintiff alleges that State Farm breached its contract with him by failing to allow him to remain employed with the company after he was not granted an Agency position. The "Declaration of Understanding/Statement of Intention" addresses this issue as follows:

> Employee candidates who withdraw from the Internship process will be offered an opportunity to return to an operations position. There are no guarantees that

individuals will return to the same position, job level, salary level, or location they had before pursuing Agency. This is determined by the Zone's needs. One job offer will be made during the path back consideration time. If the job offer is declined, employment may be terminated.

DN 44-6, p. 10. Plaintiff has failed to present a genuine issue of material fact that he is entitled to the benefits of this provision. The evidence demonstrates that Plaintiff never withdrew from the Internship process. Rather, he was investigated for ethical violations and terminated. Therefore, this provision does not apply to Plaintiff's circumstances and Defendant did not breach its contract with Plaintiff.

For the foregoing reasons, summary judgment as to Plaintiff's breach of contract claim is GRANTED.

## II.    Fraudulent Inducement

Plaintiff's next claim is for fraudulent inducement. In order for Plaintiff's claim to succeed, Plaintiff must establish the following elements of fraud by clear and convincing evidence:

a)    material representation
b)    which is false
c)    known to be false or made recklessly
d)    made with inducement to be acted upon
e)    acted in reliance thereon and
f)    causing injury.

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. 1978)). Defendants argue that summary judgment is appropriate because Plaintiff cannot prove that any false material representation was made and there was no injury.

Plaintiff argues that State Farm represented to him that if he completed the Internship

12

program and met current eligibility requirements, he would be appointed to an Agency position. Plaintiff bases this argument on the same "Declaration of Understanding/Statement of Intention" form which he relied upon in arguing his breach of contract claim. As noted previously, the Declaration of Understanding is unambiguous and does not support Plaintiff's claim that he was guaranteed an Agency position. Plaintiff has failed to point to a material provision of that document which is false in relation to his claim. In addition, Plaintiff has failed to identify any other false material representations that he was guaranteed a position, other than that his particular situation conflicted with his general understanding of how things worked at State Farm. There is no evidence that any employee of State Farm made a statement to him that he would absolutely be appointed to an Agency position if he successfully completed the program. Therefore, the evidence demonstrates that there was no guarantee of an Agency position, and Plaintiff's fraudulent inducement claim based on this alleged guarantee must fail.

Plaintiff also claims that approved candidates would be considered first for Agency openings as part of a "first in, first out" guarantee, and this representation was false because he was never interviewed for the position that was given to Carmel Stauffer, who was not an Approved candidate at the time. The "Declaration of Understanding/Statement of Intention" states as follows:

> Postings of available agency openings will be announced periodically. Approved candidates will have an opportunity to express their desire to be considered for these openings. All other interested individuals will be considered if no approved candidate expresses an interest. Any candidates not yet approved by their Executive Approval Committee must complete the screening and approval process before participating in a Site Interview.
>
> . . .
>
> A Site Interview team will conduct interviews during which candidates have an

> opportunity to learn more about the specifics of an opening. Approved candidates
> will be considered first. . . . For an approved employee candidate, a contingent job
> offer may be extended subject to a background check.

DN 44-6, p. 8. Additional information regarding the selection process was provided to Plaintiff

in a letter dated January 7, 2007. That letter congratulates Plaintiff for becoming an approved

candidate and then states:

> You will be given ten (10) business days to express interest in any openings that
> are available. After the 10 days, you will be notified if you have or have not been
> selected for a Site Interview. You may be requested to supply an updated
> business plan and financial statements. Due to the nature of the interview, some
> locations will request that your spouse or significant other attend.

State Farm Jan. 7, 2007, Letter, DN 44-6, p. 15. The Court finds that these two documents make

clear that Plaintiff was not guaranteed a Site Interview for every Agency opening. In addition,

these representations make clear that Plaintiff will be considered before non-approved

candidates. According to the affidavit of Sage Kohler, Plaintiff was considered for the position

that was eventually given to Carmel Stauffer, a non-approved candidate, but Plaintiff was not

interviewed because Kohler knew that he was under investigation for integrity issues. Plaintiff

has failed to present clear and convincing evidence that demonstrates otherwise. No material

representation indicates that Plaintiff was guaranteed an Agency position just because he was an

Approved candidate.

For the foregoing reasons, summary judgment as to Plaintiff's fraudulent inducement

claim is GRANTED.

## III.    Racial Discrimination

Plaintiff alleges that Defendants failed to place him as a State Farm Agent and terminated

him as a result of racial discrimination. As Defendants correctly note, Plaintiff's claim cannot be

brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., because "a plaintiff must first file a timely EEOC charge." *Lewis v. City of Chicago, Ill.*, 130 S.Ct. 2191, 2196-97 (2010). No such charge has been filed in this case. Accordingly, Plaintiff's claims proceed under Chapter 344 of the Kentucky Civil Rights Act ("KCRA"), Ky. Rev. Stat. Ann. § 344.010 et seq. The Kentucky Civil Rights Act makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race . . . ." Ky. Rev. Stat. Ann. § 344.040(1)(a). Although Title VII does not apply here, "[t]he Court uses federal Title VII standards to evaluate state race discrimination claims brought under Kentucky's Civil Rights Act." *Wilson v. Dana Corp.*, 210 F. Supp. 2d 867, 877 (W.D. Ky. 2002) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000); *Stewart v. Univ. of Louisville*, 65 S.W.3d 536, 539 (Ky. Ct. App. 2001)).

A plaintiff may prove his or her case through direct or circumstantial evidence of discrimination. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343 (2009). As noted by Plaintiff in his deposition testimony, no direct evidence of racial discrimination exists in this case. "In the absence of direct evidence . . . Title VII claims are subject to the familiar burden-shifting framework set forth in *McDonnell* . . . ." *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 390 (6th Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under *McDonnell*, after the plaintiff has established a prima facie case of discrimination, the burden of proof then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. 411 U.S. at 802. If the employer demonstrates such

a reason, the burden shifts back to the plaintiff to show that the stated reason is in fact pretext for unlawful discrimination. *Id.* at 804. The burden of persuasion remains with the plaintiff at all times. *Risch*, 581 F.3d at 391 (citing *Burdine*, 450 U.S. at 253).

To establish a prima facie case, the plaintiff must demonstrate "(1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class." *Talley*, 61 F.3d at 1246. The fourth factor may also be satisfied by demonstrating that a similarly situated, non-protected employee received more favorable treatment. *Id.* An adverse employment decision is defined as "a 'materially adverse change in the terms or conditions of employment because of the employer's actions.'" *Michael v. Caterpillar Fin. Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Allen v. Michigan Dept. of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999)). The proof required for a prima facie case may differ from case to case, depending on the facts. *Mills v. Ford Motor Co.*, 800 F.2d 635, 639 (6th Cir. 1986). The plaintiff must at least establish an inference of discrimination. *Id.* (citing *Burdine*, 450 U.S. at 253).

If an employer is able to offer a legitimate, non-discriminatory reason for its actions, the burden of production shifts back to the plaintiff to show pretext. "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). Plaintiff may demonstrate pretext by other means as well, such as challenging the "reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on

16

whether the employer's proffered reason for the employment action was its actual motivation.'"

*Risch*, 581 F.3d at 391 (quoting *White*, 533 F.3d at 393 (internal citations omitted)).  In *Balmer v. HCA, Inc.*, 423 F.3d 606 (6th Cir. 2005), the Sixth Circuit outlined the following analysis for determining if an employer's proffered reason is pretextual:

> The plaintiff must produce sufficient evidence from which the jury could "reasonably reject [the defendants'] explanation" and infer that the defendants "intentionally discriminated" against her. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 246-47 (6th Cir.1997). The plaintiff must submit evidence demonstrating that the employer did not "'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir.2001) (citing *Smith v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir.1998)). To inquire into the defendant's "honest belief," the court looks to whether the employer can establish "reasonable reliance" on the particularized facts that were before the employer when the decision was made. *Smith*, 155 F.3d at 807 ("[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.").

*Balmer*, 423 F.3d at 614.  For instance, the Sixth Circuit found that no reasonable jury could find pretext where an investigation was conducted, witnesses were questioned, the employer reviewed the evidence, and the plaintiff did not produce any additional evidence upon which the jury could reasonably reject the employer's explanation.  *Larocque v. City of Eastpointe*, 245 F. App'x 531, 537 (6th Cir. 2007).

The Sixth Circuit held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."  *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997).  Further, the Court held that "[b]ecause KRS Chapter 344 mirrors Title VII, we find our holding equally applicable . . . ."  *Id.*  Therefore, Reeves and Warren may not be held personally liable under section 344.040(1) of the KCRA for racial discrimination, and summary judgment is GRANTED as to any racial discrimination claims against Reeves and Warren.

The Court now turns to the merits of Plaintiff's claim against State Farm. Plaintiff has the burden of establishing his prima facie case. First, there is no question that Plaintiff, as an African American, is a member of a protected group.[2] Next, Plaintiff must establish that he was subject to an adverse employment action. Plaintiff argues that racial discrimination resulted in two adverse employment decisions: (1) his failure to obtain an Agency position and (2) his termination. Defendants believe that Plaintiff's failure to obtain an Agency position is not properly treated as a racial discrimination claim, but is really a claim for discriminatory failure to contract, which does not exist and should be dismissed. This logic is based on the fact that Title VII and the KCRA do not apply to independent contractors and the Agency position is an independent contractor position. In contrast, Plaintiff believes that because he was already a State Farm employee when he was not given an Agency position, the claim is properly brought under the KCRA.

Unlike employees, independent contractors do not receive protection under Title VII. *See Alfred v. Tenn. Farmers Mut Ins. Co.*, 8 F. Supp. 2d 1024, 1026 (E.D. Tenn. 1997), *aff'd* 145 F.3d 1329, 1998 WL 246468 (6th Cir. 1998) (Table). The same analysis applies to the KCRA. *See, e.g.*, *Steilberg v. C2 Facility Solutions, LLC*, 275 S.W.3d 732, 735 (Ky. Ct. App. 2008). Therefore, an applicant for an insurance agent independent contractor position who did not receive the position was not an employee for purposes of Title VII, and lacked a cause of action under that statute. *See Alfred*, 8 F. Supp. 2d at 1027. The present case differs in that Plaintiff was already an employee of State Farm at the time he was applying for the independent

---

[2]Race is one of the protected classes under the Kentucky Civil Rights Act. *See* Ky. Rev. Stat. Ann. § 344.040(1)(a).

contractor position.[3]

　　*Alfred* makes it clear that if Plaintiff had not been an employee at the time he applied for an Agent position, his claim would fail. *See id.* The issue the Court must decide is whether Plaintiff's status as an employee intern allows his discrimination claim for failure to receive an Agent position to proceed. A case with similar facts from the District of Kansas offers some insight. *See Wright v. State Farm Mut. Auto. Ins. Co.*, 911 F. Supp. 1364 (D. Kan. 1995). In *Wright*, the African American male plaintiff was employed as a trainee agent for two years prior to becoming an independent contractor insurance agent. *Id.* at 1369. The district court held that it lacked jurisdiction to consider any claims of racial discrimination occurring after the plaintiff became an agent. *Id.* at 1372. The court's analysis then continued by considering the plaintiff's Title VII claims that occurred *prior* to the plaintiff becoming an agent. *Id.* at 1372-73. The plaintiff's allegations were based on actions occurring during his training, resulting in claims of disparate treatment and hostile work environment. *Id.* Although Plaintiff's claim differs from the plaintiff's claims in *Wright*, the Court finds that Plaintiff's status as an employee at the time the alleged discrimination occurred is, as in *Wright*, enough to allow the claim to proceed. Accordingly, the Court regards Plaintiff's failure to obtain the Agent position as an adverse employment action[4] and continues its inquiry considering both adverse employment actions.

---

[3]Neither party disputes that Plaintiff was a State Farm employee during the time he was in the Internship program or that he would have been an independent contractor had he become an Agent.

[4]This claim is analogous to a failure-to-promote claim., which requires that Plaintiff be (1) a member of a protected class, (2) qualified for the promotion, (3) considered and denied the promotion, and (4) similarly situated employees not in the protected class received promotions. *See Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006).

Next, Plaintiff must establish that he was qualified for the position in order to prove his prima facie case. "To establish that [he] is qualified for the position, a Title VII plaintiff need only show that [he] satisfied an employer's 'objective' qualifications." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). Defendants argue that Bowers has failed to present any evidence demonstrating he was still qualified for the position of Agency intern after State Farm determined he violated the Code of Conduct. The Court should not, however, rely on Defendant's non-discriminatory reason for discharging Plaintiff in considering whether Plaintiff was qualified for the position. *See Kulik v. Med. Imaging Res., Inc.*, 325 F. App'x 413, 414 (6th Cir. 2009) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000)). Finding no other evidence indicating that Plaintiff was not qualified to be an Agency intern or Agent, the Court finds that this portion of the prima facie analysis has been satisfied.

Finally, Plaintiff must demonstrate either that he was replaced by a person outside of the protected class or a similarly situated, non-protected employee received more favorable treatment. *See Talley*, 61 F.3d at 1246. As to Plaintiff's termination, he cannot prove that he was replaced by a person outside of the protected class because there is no evidence that his intern position was ever filled. Nor can Plaintiff establish that similarly situated, non-protected employees received more favorable treatment; i.e., Plaintiff has failed to provide factual evidence that other employees who allegedly violated the Code of Conduct were not investigated or terminated. Accordingly, Plaintiff's claim based upon his termination fails.

Plaintiff's claim based upon his failure to receive an Agency position requires additional scrutiny. Plaintiff has demonstrated that three non-protected employees received promotions to Agent positions when Plaintiff did not. State Farm argues, however, that these employees were

not similarly situated. In order to establish that other employees were similarly situated, Plaintiff must "demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original). These relevant aspects should be "nearly identical." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

Three State Farm employees were considered for and received Agent positions during the time Plaintiff was a candidate: Jeff Flood, Mark Cumella, and Carmel Stauffer. Jeff Flood and Mark Cumella are both white males, while Carmel Stauffer is a Hispanic female. Both Jeff Flood and Mark Cumella were Approved candidates who had completed the Intern program at the same time as Plaintiff and desired to work in the same geographic area. Carmel Stauffer was in the Intern class behind Plaintiff and was not yet an Approved candidate at the time she was considered for an Agent position. These three candidates and Plaintiff were all in line for Agent openings, received the same training, were interviewed and considered by the same supervisors, and were subject to the same terms and conditions of employment. The Court finds that, in all relevant respects, these candidates were similarly situated to Plaintiff. Accordingly, Plaintiff has established a prima facie claim based upon his failure to obtain an Agent position.

After Plaintiff establishes his prima facie case, the burden of production shifts to State Farm to offer a legitimate, non-discriminatory reason for its adverse employment decision. In this case, State Farm must explain why Plaintiff was not chosen for an Agency position. According to State Farm, Jeff Flood received an Agent position instead of Plaintiff because Flood had prior experience working for one of State Farm's top agents prior to beginning the Intern program. State Farm needed someone to fill a position within two weeks after an Agent

left abruptly.  In contrast, Plaintiff had no such experience.  Next, State Farm states that an Agent position was given to Mark Cumella because he was a caring person who could adequately replace a dying agent while providing comfort during a difficult time.  Cumella is a displaced Hurricane Katrina victim who had also worked as a Catholic headmaster and later devoted time to raising money for displaced Hurricane Katrina victims.  Plaintiff, on the other hand, was unimpressive during his interview and his interviewers were aware that he was under investigation for integrity issues.  Finally, State Farm appointed Carmel Stauffer over Bowers because she was not under investigation for integrity issues, like Bowers.  Moreover, Stauffer did not receive a position until after Bowers had been terminated, thereby making it impossible for Bowers to have been chosen for that position.

Because State Farm has offered legitimate non-discriminatory reasons for its adverse employment decisions,[5] the burden shifts to Plaintiff to demonstrate pretext by showing that the stated reason either (1) has no basis in fact, (2) did not actually motivate the adverse employment decision, or (3) was insufficient to motivate the adverse employment decision.  *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1085 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).

First, Plaintiff cannot establish that State Farm's selection of Jeff Flood had no basis in fact, did not actually motivate its decision, or was insufficient.  Plaintiff has presented no evidence to refute Flood's qualifications and prior experience working for a top State Farm Agent.  Nor has Plaintiff presented any additional evidence demonstrating that the reason was

---

[5]"[T]he employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" *Bd. of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 n. 2 (1978).

pretextual.

Plaintiff's only objection as to the selection of Stauffer appears to be that she was not an Approved candidate at the time of her selection, and he should have been the next person chosen for an Agent position. This argument, however, does not refute the facts of State Farm's legitimate, non-discriminatory reason. As noted earlier, there was no guarantee that Approved candidates would obtain an Agency position before non-approved candidates–just that Approved candidates would be considered first. Plaintiff also acknowledges that he was under investigation at the time candidates were being considered for the position eventually filled by Stauffer, which supports State Farm's non-discriminatory reason for his non-selection. For these reasons, Plaintiff has not established pretext as to Stauffer.

Accordingly, Plaintiff's argument must rest on the selection of Mark Cumella. Plaintiff must show that the proffered reason has no basis in fact, was not the actual motivation or was insufficient for State Farm's adverse employment decisions. To demonstrate that the stated reason was not the actual motivation for not selecting Plaintiff for the Agent position, Plaintiff must establish that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer*, 29 F.3d at 1085.

The Court finds that Plaintiff has not created a genuine issue of material fact that the stated reason he was not selected for the position filled by Mark Cumella was not based in fact, the actual motivation or an insufficient motivation. In her affidavit, Sherry Henry states that Plaintiff was not chosen for the position for several reasons:

> (1) Cumella had better field development results than Bowers while an Ageny [sic] Intern; (2) I did not believe Bowers had as much of a caring, compassionate

> temperament as Cumella based on my interactions with him; (4) [sic] Bowers'
> interview was not as impressive as Cumella's; and (4) I was also aware of the
> potential integrity issues with Bowers and the ongoing investigation related to the
> integrity issues. Cumella was not under investigation or inquiry for integrity
> issues.

Henry Aff., DN 44-7, ¶ 10. Plaintiff alleges that he was never truly considered for the Agent

position eventually filled by Mark Cumella.

According to Plaintiff, Mark Cumella received a phone call from Sherry Henry informing

him that he had been chosen to fill an Agent position which would soon be open. Plaintiff

claims he was in the car with Cumella when Cumella received this call. Plaintiff could not hear

Henry's side of the conversation. Plaintiff also claims that Cumella met with the outgoing Agent

prior to any interviews for the position. Plaintiff was not present at this meeting. Following

these two events, Sherry Henry and Sage Kohler conducted interviews of both Plaintiff and

Cumella. Although Plaintiff believes he was only interviewed so that State Farm could cover

themselves legally, he admits that this is speculation. Finally, Plaintiff alleges that it was not

until after these interviews that Ron Reeves assumed a supervisory role over him and began to

look into his production numbers. Therefore, Henry's statement that she was aware of the

ongoing investigation is false.

Plaintiff alleges that the interview process was rigged and Plaintiff was not genuinely

being considered for the position. In support of this argument, Plaintiff references the phone

conversation between Cumella and Henry prior to the interview during which Henry offered the

position to Cumella. Plaintiff's recollection of this conversation, however, is hearsay and

inadmissible at trial. Therefore, it cannot be used to create a genuine issue of material fact. *See*

*Wiley v. United States*, 20 F.3d 222, 225 (6th Cir. 1994) ("[H]earsay evidence cannot be

considered on a motion for summary judgment.").  In addition, Plaintiff never states how he has personal knowledge that Cumella met with Henry and the outgoing Agent prior to the interviews.  *See id.* ("Rule 56(e) requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.").

Thus, Plaintiff's only argument as to pretext rests on the fact that Henry was not aware of the ongoing investigation at the time of the interview.  A review of the evidence demonstrates that the earliest indication of an ongoing investigation into Plaintiff's conduct occurred in late January or early February of 2008, when Ron Reeves received a call from Julie Maloy, the Vice President of Agency for Kentucky, asking him to look into discrepancies in Plaintiff's production numbers.  There is a question of fact as to when the interviews for the Agency position took place, but it was sometime during the month of January.  In addition, Ron Reeves believes Sherry Henry was unaware of any investigation as to Plaintiff's conduct at that time.  Accordingly, Plaintiff has at least created a genuine issue of material fact as to whether the ongoing investigation had anything to do with his failure to receive the Agent position.  The Court finds that this circumstantial evidence, however, is insufficient to create a genuine issue of material fact as to pretext.  Plaintiff does not refute that Mark Cumella had better field development results or a caring and compassionate personality.  Nor does Plaintiff allege that his own interview went well; in fact, Plaintiff acknowledges that "something was not right during the interview."  Plaintiff Aff., DN 51-1, ¶ 7.  In addition, Plaintiff's evidence regarding any prior conversations or meetings between management and Cumella is inadmissible and may not be considered.  Considering all of the above, the Court cannot find that "the sheer weight of the

circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext . . . ." *Manzer*, 29 F.3d at 1085.

There were three depositions taken in this matter. Defendants deposed Plaintiff twice and submitted several affidavits. Plaintiff deposed Ronald Reeves and submitted an affidavit of Plaintiff. Much of Plaintiff's argument is phrased in terms of what the evidence "will" show. The Court must make its determination on the probative evidence now before the Court. The Court cannot rely on hearsay, speculation, or non-expert opinion. Considering the record before the Court and the parties' citations to the relevant record, and for the reasons stated herein, the Court concludes that Plaintiff cannot prove his racial discrimination claim, and summary judgment is GRANTED.

## IV. Retaliatory Discharge

Finally, Plaintiff alleges that his termination was an act of retaliation. "Unlawful retaliation under the KCRA is consistent with the interpretation of unlawful retaliation under federal law." *Patrick v. Corr. Corp. of America*, No. 2009-CA-001919-MR, 2010 WL 3928484, at *4 (Ky. Ct. App. Oct. 8, 2010). Therefore, to establish a claim of retaliatory discharge, Plaintiff must show: (1) he engaged in protected activity; (2) Defendants were aware of this protected activity; (3) Defendants took some adverse employment action against Plaintiff or subjected Plaintiff to "severe or pervasive retaliatory harassment by a supervisor;" and (4) a causal connection exists between the protected activity and adverse employment action or harassment. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis removed).

Defendants argue that Plaintiff cannot establish a claim for retaliation under Kentucky

law because there is no evidence that Plaintiff engaged in any protected activity. "Protected activity includes 'opposing any practice that the employee reasonably believes to be a violation of Title VII . . . whether or not the challenged practice ultimately is found to be unlawful.'" *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 570-71 (6th Cir. 2009) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000)). The record in this case does not support Plaintiff's retaliation claim, as it is clear he never raised complaints of racial discrimination, and therefore, did not engage in protected activity.[6] Further, Plaintiff's response brief fails to address this claim entirely. Accordingly, summary judgment is GRANTED as to Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.

---

[6]Plaintiff's May 20, 2010, deposition contains the following testimony:

Q:     You never complained to anyone while you were with State Farm that you thought you had been treated one way or another because of your race, did you?
A:     I don't know.
. . .
A:     I could have, but I didn't complain about the situation. You know, I see where you're going. I didn't complain about the situation. And I know I'm on record of saying I didn't complain to nobody. So I can't say I did now.
. . .
Q:     You don't remember making a formal complaint, calling the hotline, asking for a meeting the purpose of which was to say I think I'm being mistreated because of my race?
A:     I could have, but I didn't.

Jeffrey Todd Bowers Depo. Transcript, DN 44-4, p. 91-92.